[No. B225512. Second Dist., Div. Five. Nov. 22, 2011.]

MICHAEL M. KOSHAK, Plaintiff and Respondent, v.
HANY MALEK, Defendant and Appellant.

**1542**

COUNSEL

Horvitz & Levy, Barry R. Levy, Jason R. Litt; Law Office of Edward J. Blum and Edward J. Blum for Defendant and Appellant.

Pasternak, Pasternak & Patton and John W. Patton, Jr., for Receiver David J. Pasternak.

Johnson & Higgin and Jeffery W. Johnson for Plaintiff and Respondent.

OPINION

MOSK, J.—

### INTRODUCTION

The trial court found defendant and appellant Hany Malek (Malek) guilty on 10 charges of indirect contempt. In addition to imposing jail time and fines, as well as ordering him to pay attorney fees, the trial court ordered Malek to pay $1.7 million in restitution to a receivership based on what the trial court considered its inherent power to control the proceedings before it and enforce its prior orders. Malek appeals from the restitution order,[1] arguing, inter alia, that the entry of that order without prior notice or a meaningful opportunity to be heard violated his due process rights. On our own motion, we raised the preliminary issue of whether the restitution order is appealable.

We hold the restitution order is appealable as a final, collateral order requiring the immediate payment of money. We further hold that the trial court violated Malek's due process rights when it entered the restitution order without prior notice or a meaningful opportunity to be heard. We therefore reverse the restitution order.

### FACTUAL AND PROCEDURAL BACKGROUND[2]

In 2005, plaintiff and respondent Michael M. Koshak (Koshak) formed a business venture with Malek that operated through a medical corporation, Choice Providers Medical Group, also known as Noble Community Medical

---

[1] Malek also filed a separate petition for a writ of certiorari challenging the contempt judgment.

[2] Because, as explained below, we resolve this appeal on due process grounds, we state only the facts and procedures relevant to that issue.

Associates, Inc., of Los Angeles (Choice Providers). In 2008, Koshak sued Malek asserting 12 causes of action and alleging generally that Malek "developed a sophisticated scheme over an extended period of time using at least 18 different bank accounts with 5 federal tax identification numbers under at least 12 different names to accomplish, [and] then disguised and hid this massive fraud from [Koshak]." United Managed Health Care Center (United), a corporation in which Malek held a substantial interest, cross-complained against Koshak and Choice Providers alleging that Koshak was attempting to force Malek out of Choice Providers's business "so that [Koshak] would be able to steal the medical practice which [United and Malek had] supported through a difficult start-up period, just as [Choice Providers] turned a corner and [became] self-sustaining."

In December 2008, with the acquiescence of Malek and Koshak, the trial court entered an order appointing David Pasternak as receiver (the receiver) to take possession, custody, and control over Choice Providers. In December 2009, the receiver filed an ex parte application for the issuance of an amended order to show cause regarding contempt against Malek.[3] The proposed amended order to show cause listed 29 different acts that allegedly violated the trial court's receivership order. In the ex parte application, the receiver requested, "in addition to any fines or imprisonment imposed upon [Malek], that he be ordered to pay the Receiver's reasonable attorneys' fees incurred in bringing this contempt proceeding." Neither the ex parte application nor the proposed order made any reference to a request for an order requiring Malek to pay any other monies—much less $1.7 million in restitution that the trial court later ordered.

Following a three-week bench trial, the trial court found Malek guilty of 10 of the 29 contempt charges alleged in the amended order to show cause. At the subsequent sentencing hearing, the trial court sentenced Malek on the 10 contempt convictions to five days in jail for each conviction, for a total of 50 days, and fined Malek $1,000 for each conviction, for a total fine of $10,000—i.e., the maximum amount of jail time and fines the trial court could impose under Code of Civil Procedure section 1218, subdivision (a),[4] the section under which the receiver brought the contempt charges. The trial court also ordered Malek to pay the receiver's attorney fees incurred in pursuing the contempt proceedings.

At the close of the sentencing hearing, the receiver requested that the trial court "consider any other available sanctions or punishments" to cause Malek

---

[3] In June 2009, the receiver filed the original ex parte application for issuance of an order to show cause regarding contempt against Malek alleging that Malek was interfering with the receiver's administration of the receivership estate and the receiver's exercise of management and control over Choice Providers.

[4] See footnote 5, *post*, for the text of Code of Civil Procedure section 1218, subdivision (a).

to return the money he diverted from the receivership. Referring to its purported "independent authority to make sure that its orders are enforced," the trial court responded that it would "make a separate order . . . that [Malek] reimburse the receivership." The trial court then ordered as follows: "The court does however order that you pay or that you pay into the receiver estate the following sums: $650,000 which represents the amount the receiver showed was diverted from—into Care Point, in other words, that contract that you had with Care Point where you sold the receivables, plus interest in the amount of $84,767.12. [¶] $364,900–$364,948 plus $31,644.80 in interest according to the schedule that was introduced in the hearing by Mr. Lobuglio. [¶] And in addition, $580,281.67 was the amount shown to have been diverted by your own exhibits, plus interest in the amount of $64,517.34. [¶] The court orders that each of those sums be paid into the receivership estate. I'm not ordering that all that money doesn't belong to you. I'm simply ordering that you pay it into the receivership estate so that the receivership will have control of the money and they make disbursements back to you as that money is owed back to you. [¶] So some of it may come back, all of it may come back, that's going to be up to the receiver. That's what the receiver is there for. [¶] That money is due to the receiver on or before May 27, 2010." The trial court added, "In the event the money is not paid, we will hold an ability to pay hearing on the 28th [of May] . . . ." The trial court's restitution order was reflected in a minute order dated April 30, 2010. Malek filed a timely notice of appeal from the restitution order.

## DISCUSSION

### A. *Appealability*

Malek asserts in his statement of appealability that the restitution order is appealable because it requires him to pay money to the receivership. The receiver does not contest Malek's position regarding appealability, but because the issue implicates our jurisdiction, we review the issue on our own motion. (*Chavez v. Carpenter* (2001) 91 Cal.App.4th 1433, 1437 [111 Cal.Rptr.2d 534].)

Code of Civil Procedure section 904.1 provides in subdivision (a)(1) that an appeal "may be taken" "[f]rom a judgment." Additional orders that are appealable are listed in other subdivisions of section 904.1.

" 'California is governed by the "one final judgment" rule which provides "interlocutory or interim orders are not appealable, but are only 'reviewable on appeal' from the final judgment." [Citation.] . . .' 'Under the basic theory of the one final judgment rule . . . , orders are appealable only when expressly made appealable by statute . . . , or when they are in effect final judgments.' "

(*County of San Diego v. Arzaga* (2007) 152 Cal.App.4th 1336, 1343–1344 [62 Cal.Rptr.3d 329].) The California Supreme Court has said, however, that certain "collateral" orders may be appealable even if not specifically listed in Code of Civil Procedure section 904.1. (*In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368 [134 Cal.Rptr. 197, 556 P.2d 297]; see *Fish v. Fish* (1932) 216 Cal. 14, 16 [13 P.2d 375]; see also *Lund v. Superior Court* (1964) 61 Cal.2d 698, 709 [39 Cal.Rptr. 891, 394 P.2d 707]; *Drum v. Superior Court* (2006) 139 Cal.App.4th 845, 850 [43 Cal.Rptr.3d 279] ["In addition to the statutory exceptions, the common law has developed its own rules governing appeals from orders that do not finally dispose of all issues before the trial court. One of those rules, extant since at least 1895, holds that an appeal is allowed if the order is essentially a final judgment against a party growing out of a matter collateral to the main proceeding, which either directs the appellant to pay money or directs some action be taken by or against the appellant."].)

Further, our Supreme Court has stated, "When a court renders an interlocutory order collateral to the main issue, dispositive of the rights of the parties in relation to the collateral matter, and directing payment of money or performance of an act, direct appeal may be taken. [Citations.] This constitutes a necessary exception to the one final judgment rule. Such a determination is substantially the same as a final judgment in an independent proceeding. (See *Fish v. Fish*[, *supra*,] 216 Cal. [at p.] 16 . . . ; *Stockton v. Rattner* (1972) 22 Cal.App.3d 965, 968 [99 Cal.Rptr. 787], and cases cited therein . . . .)" (*In re Marriage of Skelley, supra*, 18 Cal.3d at p. 368; see *Sjoberg v. Hastorf* (1948) 33 Cal.2d 116, 119 [199 P.2d 668]; *Marsh v. Mountain Zephyr, Inc.* (1996) 43 Cal.App.4th 289, 297–298 [50 Cal.Rptr.2d 493].)

To qualify as appealable, the interlocutory order must be a final determination of a matter that is collateral—i.e., distinct and severable—from the general subject of the litigation. (*Yeboah v. Progeny Ventures, Inc.* (2005) 128 Cal.App.4th 443, 449, fn. 2 [27 Cal.Rptr.3d 150], quoting 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 60, p. 116, now 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 99, pp. 162–163.) The order is deemed final if further judicial action is not required on the matters dealt with by the order. (*Steen v. Fremont Cemetery Corp.* (1992) 9 Cal.App.4th 1221, 1228 [11 Cal.Rptr.2d 780].) The order is not "collateral" if it is a "necessary step" to the determination of the issue in the case. (See, e.g., *San Joaquin County Dept. of Child Support Services v. Winn* (2008) 163 Cal.App.4th 296, 300 [77 Cal.Rptr.3d 470].) "The majority view is that an appealable 'collateral' judgment or order must direct the *payment of money* or *performance of an act*. [Citations.]" (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2010) ¶ 2:78, p. 2-45 (rev. # 1, 2010).)

█ Courts have held certain orders requiring payment before a judgment in a receivership proceeding to be appealable. For example, in *Fish v. Fish,*

*supra*, 216 Cal. at page 16, the court held that an order to pay a receiver's fees and sell property constituted a collateral, appealable order. In *Steinberg v. Goldstein* (1954) 122 Cal.App.2d 516, 517, 518 [265 P.2d 153], the court held appealable a receiver's orders for the appellant "to make substantial payments and to do certain things within five days, and the receiver was directed to take steps to enforce those provisions of the order." (See also *Los Angeles v. Los Angeles C. Water Co.* (1901) 134 Cal. 121, 124 [66 P. 198] [prejudgment order of payment of compensation to receiver appealable]; *Brown v. Memorial Nat. Home Foundation* (1958) 158 Cal.App.2d 448, 459–460 [322 P.2d 600] [order for ongoing payment of compensation to receiver appealable].)

In this case, the trial court explained that Malek, after paying the restitution, could receive from the receivership monies equivalent to or less than the restitution, presumably after a final determination of the litigation commenced by Koshak. The trial court, however, made clear that whatever monies Malek recovered would be "up to the receiver." Although the trial court left open the possibility that the receiver might in the future return some or all of the restitution amount, Malek was nevertheless subject to a final order of restitution to be paid to the receiver within a month. That he might recover monies after litigating the respective rights and remedies of the parties to the underlying litigation does not suggest a lack of finality of the restitution order. The amount of the restitution was not to be held in trust for Malek's sole benefit. The trial court's order provided that it was subject to disposition by the receiver. Moreover, the trial court's statement that Malek might recover the monies demonstrates that the restitution order is not a legal or factual determination as to any of the disputes in the litigation.

On its face, the restitution order requires Malek to pay monies by a certain date. And there is no suggestion that ability to pay was a factor in the imposition or amount of the restitution order. Ability to pay would only affect whether Malek could be held in contempt for not making the required payment. (See, e.g., 8 Witkin, Cal. Procedure (5th ed. 2008) Enforcement of Judgment, § 351, p. 380 [support orders].) Accordingly, the restitution order requiring immediate payment is final and collateral, and therefore is appealable.

B.   *Due Process*

Malek raises several challenges to the validity of the restitution order, including the contention that the manner in which the trial court entered the order violated his right to due process. According to Malek, the trial court entered the order immediately after it sentenced him for contempt and without any prior notice or a meaningful opportunity to be heard.

"The Fourteenth Amendment to the United States Constitution and article I, section 7, subdivision (a) of the California Constitution ensure that an individual may not be deprived of life, liberty or property without due process of law. Central to this constitutional right is the guarantee that 'absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard.' (*Boddie* v. *Connecticut* (1971) 401 U.S. 371, 377 [28 L.Ed.2d 113, 118, 91 S.Ct. 780]; *Payne* v. *Superior Court* (1976) 17 Cal.3d 908, 914 [132 Cal.Rptr. 405, 553 P.2d 565].)" (*Salas v. Cortez* (1979) 24 Cal.3d 22, 26–27 [154 Cal.Rptr. 529, 593 P.2d 226].) "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.' *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 [94 L.Ed. 865, 70 S.Ct. 652] (1950). We have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.' [Fn. omitted.] *Boddie* v. *Connecticut*[, *supra*,] 401 U.S. 371, 379 . . . (emphasis in original); see *Bell* v. *Burson*, 402 U.S. 535, 542 [29 L.Ed.2d 90, 91 S.Ct. 1586] (1971)." (*Cleveland Board of Education v. Loudermill* (1985) 470 U.S. 532, 542 [84 L.Ed.2d 494, 105 S.Ct. 1487].) "An elementary and fundamental requirement of due process in any proceeding . . . is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. [Citations.] The notice must be of such nature as reasonably to convey the required information [citation], and it must afford a reasonable time for those interested to make their appearance [citations]." (*Mullane v. Central Hanover Tr. Co., supra*, 339 U.S. at p. 314.)

" 'We start with the basic proposition that in every case involving a deprivation of property within the purview of the due process clause, the Constitution requires some form of notice and a hearing.' " (*Kash Enterprises, Inc. v. City of Los Angeles* (1977) 19 Cal.3d 294, 307 [138 Cal.Rptr. 53, 562 P.2d 1302], quoting *Beaudreau v. Superior Court* (1975) 14 Cal.3d 448, 458 [121 Cal.Rptr. 585, 535 P.2d 713].) "Normally notice and an opportunity for a hearing must precede even a temporary deprivation of a property interest." (*Menefee & Son v. Department of Food & Agriculture* (1988) 199 Cal.App.3d 774, 781 [245 Cal.Rptr. 166], citing *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194, 215–216 [124 Cal.Rptr. 14, 539 P.2d 774].)

The receiver argues that Malek has not been permanently deprived of monies because the monies received by the receiver as restitution may be returned in whole or in part, presumably depending on the outcome of the litigation between Malek and Koshak and a determination by the receiver. The restitution order here, however, is to some degree comparable to certain ancillary or provisional remedies, such as a prejudgment writ of attachment.

California courts long ago disapproved of state procedures under which prejudgment writs of attachment would issue without prior notice or a meaningful opportunity to be heard. For example, in *Randone v. Appellate Department* (1971) 5 Cal.3d 536 [96 Cal.Rptr. 709, 488 P.2d 13] (*Randone*), our Supreme Court held that the statute under which a prejudgment writ of attachment had been issued violated the debtor's due process rights. In so holding, the court explained that "the United States Supreme Court in *Sniadach* v. *Family Finance Corp.* (1969) 395 U.S. 337 [23 L.Ed.2d 349, 89 S.Ct. 1820], concluded that a Wisconsin prejudgment wage garnishment statute violated a debtor's right to procedural due process, by sanctioning the 'taking' of his property without affording him prior notice and hearing. . . . [¶] . . . [¶] The recent line of cases, commencing with *Sniadach*, reaffirms the principle that an individual must be afforded notice and an opportunity for a hearing before he is deprived of any significant property interest, and that exceptions to this principle can only be justified in 'extraordinary circumstances.' " (*Id.* at pp. 540–541.) The court in *Randone* concluded that "the instant attachment provision authorizes the deprivation of a debtor's property without prior notice or hearing; it has not been narrowly drawn to confine such deprivation to those 'extraordinary circumstances' in which a state or creditor interest of overriding significance might justify summary procedures. As such, we find that [the statute under which the prejudgment writ of attachment issued] constitutes a denial of procedural due process and violates article 1, section 13 of the California Constitution and the Fifth and Fourteenth Amendments of the United States Constitution." (*Id.* at p. 557.) Since its decision in *Sniadach*, the United States Supreme Court has confirmed consistently that prejudgment orders affecting a party's rights in property entered without notice and an opportunity to be heard violate due process requirements. (*Sniadach v. Family Finance Corp., supra*, 395 U.S. 337 [prejudgment garnishment]; *Connecticut v. Doehr* (1991) 501 U.S. 1 [115 L.Ed.2d 1, 111 S.Ct. 2105] [prejudgment writ of attachment]; *Fuentes v. Shevin* (1972) 407 U.S. 67 [32 L.Ed.2d 556, 92 S.Ct. 1983] [summary seizure of goods under a writ of replevin]; *North Georgia Finishing, Inc. v. Di-Chem, Inc.* (1975) 419 U.S. 601 [42 L.Ed.2d 751, 95 S.Ct. 719] [prejudgment garnishment].)

■ Malek argues that although he had notice of the contempt proceedings, that notice was not sufficient to advise him of the receiver's separate request for restitution. "Willful failure to comply with an order of the court constitutes contempt. (*In re Grayson* (1997) 15 Cal.4th 792, 794 [64 Cal.Rptr.2d 102, 937 P.2d 645]; Code Civ. Proc., § 1209, subd. (a)5.)" (*In re Rubin* (2001) 25 Cal.4th 1176, 1179 [108 Cal.Rptr.2d 593, 25 P.3d 1075].) "A trial court may take action to punish contempt under section 1218 of the Code of Civil Procedure. [Footnote omitted.] The elements of proof necessary to support punishment for contempt are: (1) a valid court order, (2) the alleged

contemnor's knowledge of the order, and (3) noncompliance. (*Moss v. Superior Court* (1998) 17 Cal.4th 396, 428 [71 Cal.Rptr.2d 215, 950 P.2d 59]; Code Civ. Proc., § 1209, subd. (a)(5).) The order must be clear, specific, and unequivocal. (*Wilson v. Superior Court* (1987) 194 Cal.App.3d 1259, 1273 [240 Cal.Rptr. 131].) 'Any ambiguity in a decree or order must be resolved in favor of an alleged contemnor.' (*In re Blaze* (1969) 271 Cal.App.2d 210, 212 [76 Cal.Rptr. 551].)" (*In re Marcus* (2006) 138 Cal.App.4th 1009, 1014–1015 [41 Cal.Rptr.3d 861].) " 'A proceeding for the punishment of an indirect contempt is commenced by the presentation of an affidavit setting forth the alleged contemptuous acts. (Code Civ. Proc., § 1211.) The affidavit is in effect a complaint, frames the issues before the court and is a jurisdictional prerequisite to the court's power to punish.' (*In re Gould* (1961) 195 Cal.App.2d 172, 175 [15 Cal.Rptr. 326].)" (*Moss v. Superior Court, supra,* 17 Cal.4th at p. 401, fn. 1.)

The only prior notice of a pending proceeding that Malek received was the ex parte application for the issuance of an amended order to show cause regarding contempt. The application put Malek on notice that he could be jailed, fined, and ordered to pay the receiver's attorney fees as a result of that contempt proceeding,[5] but he had no notice that the testimony and evidence introduced in that proceeding could also be used as the basis for a substantial restitution order issued under the trial court's "independent authority" to enforce its prior orders or otherwise. Thus, the notice of the contempt proceedings did not provide Malek notice concerning the potential for the restitution order, or any meaningful opportunity to address such a possibility, because under Code of Civil Procedure section 1218, subdivision (a) and the unique and limited nature of those quasi-criminal proceedings, the receiver's application sought and could only seek jail time, fines, and attorney fees.

■ Under the due process clauses of the federal and state Constitutions, Malek was entitled to reasonable notice that, in addition to holding a contempt proceeding, the trial court intended to rely on the evidence from

---

[5] The receiver made the ex parte application for an amended order to show cause regarding contempt pursuant to Code of Civil Procedure section 1211 et seq. Section 1211, subdivision (a) provides in pertinent part: "When the contempt is not committed in the immediate view and presence of the court, or of the judge at chambers, an affidavit shall be presented to the court or judge of the facts constituting the contempt, or a statement of the facts by the referees or arbitrators, or other judicial officers." Section 1218, subdivision (a) provides: "Upon the answer and evidence taken, the court or judge shall determine whether the person proceeded against is guilty of the contempt charged, and if it be adjudged that he or she is guilty of the contempt, *a fine may be imposed on him or her not exceeding one thousand dollars ($1,000), payable to the court, or he or she may be imprisoned not exceeding five days, or both.* In addition, a person who is subject to a court order as a party to the action, or any agent of this person, who is adjudged guilty of contempt for violating that court order *may be ordered to pay to the party initiating the contempt proceeding the reasonable attorney's fees and costs incurred* by this party in connection with the contempt proceeding." (Italics added.)

that proceeding to also consider entering a restitution order in excess of $1 million. Malek, because he did not receive any such notice prior to the sentencing hearing, had no time to prepare a defense on the restitution issue, both as to entitlement and amount. Instead, Malek was required to address the restitution order for the first time *as it was being made* and without briefing or a separate hearing. Because the record does not demonstrate any extraordinary circumstances that would justify an exception to the requirements of due process, and the receiver does not assert any such circumstance, Malek was entitled to notice and a hearing. Accordingly, the trial court's failure to afford Malek those basic procedural rights prior to entering the restitution order—i.e., "the rudiments of fair play" (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 654 [183 Cal.Rptr. 508, 646 P.2d 179])—violated his due process rights and requires us to reverse that order. (See *In re Marriage of Carlsson* (2008) 163 Cal.App.4th 281, 293 [77 Cal.Rptr.3d 305] ["[t]he failure to accord a party litigant his constitutional right to due process is reversible per se, and not subject to the harmless error doctrine"]; see also *Kelly v. New West Federal Savings* (1996) 49 Cal.App.4th 659, 677 [56 Cal.Rptr.2d 803] ["where the error results in denial of a fair hearing, the error is reversible per se"].)

In response to Malek's due process contentions, the receiver does not argue that the trial court afforded Malek fair notice or a fair hearing on the restitution issue, or that the issues underlying the contempt proceeding were the same as, or overlapped with, the issues underlying the restitution order. Instead, he argues that no due process violation has occurred because Malek has yet to pay any amount under the order and, even if Malek had made the required restitution, he would not have been *permanently* deprived of any property because the order is not a final determination that Malek has no entitlement to some or all of those funds. Neither argument withstands scrutiny. The restitution order is an unequivocal order to pay a substantial sum of money by a date certain. Thus, but for this appeal, Malek would have been required to pay the specified amounts to the receiver and, as a result, would have lost the use of those funds for an unspecified period of time with no assurance that he would at some point in the future receive some or all of it back. As a result, the restitution order contemplates a substantial deprivation of a valuable property right. The order, which provides that the funds to be paid will be held subject to further determination by the receiver, still required notice and a hearing, just as prejudgment attachments, garnishments, and other similar prejudgment provisional remedies.

In making this determination, we do not decide whether Malek is obligated to make restitution based on the evidence adduced during the contempt proceeding, nor do we decide the amount of any such restitution obligation. Those are matters for the trial court to determine in the first instance at a duly noticed hearing scheduled for that specific purpose and following an adequate time period for briefing on those issues.

Because our determination of the due process challenge resolves the appeal in Malek's favor, we do not reach his other contentions concerning the validity of the restitution order.

## DISPOSITION

The restitution order is reversed, and the matter is remanded for further proceedings consistent with this opinion. Malek shall recover his costs on appeal.

Turner, P. J., and Kriegler, J., concurred.