Filed: 7/31/13  Koshak v. Malek CA2/5
## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MICHAEL KOSHAK et al., | B242137 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. LC083095) |
| v. | |
| HANY MALEK, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of the County of Los Angeles, Frank Johnson, Judge.  Affirmed.

Law Office of Edward J. Blum and Edward J. Blum, attorney for Defendant and Appellant.

Johnson & Higgin, Jeffery W. Johnson for Plaintiffs and Respondents.

# INTRODUCTION

Defendant and appellant Hany Malek (Malek) appeals from a trial court order requiring him to make restitution in the amount of $1.9 million to a receivership estate. According to Malek, the trial court violated his due process rights when it entered the restitution order based solely on the evidence submitted and findings made at a prior contempt hearing.

We hold that because the trial court afforded Malek a full and fair opportunity to cross-examine witnesses who testified at the contempt hearing, examine any other witnesses he wished to call, introduce any other evidence, and make any further arguments in opposition to the restitution request, Malek's due process rights were not violated. We therefore affirm the restitution order.

# FACTUAL BACKGROUND[1]

## A.      The Litigation

In 2005, plaintiff and respondent Michael M. Koshak (Koshak) formed a business venture with Malek that operated through a medical corporation, Choice Providers Medical Group, also known as Noble Community Medical Associates, Inc., of Los Angeles (Choice Providers). In 2008, Koshak sued Malek asserting 12 causes of action and alleging generally that Malek "developed a sophisticated scheme over an extended period of time using at least 18 different bank accounts with 5 federal tax identification numbers under at least 12 different names to accomplish, [and] then disguised and hid this massive fraud from [Koshak]." United Managed Health Care Center (United), a corporation in which Malek held a substantial interest, cross-complained against Koshak

---

[1]      Certain of the general background facts relating to the filing of the litigation, the appointment of the receiver, the contempt proceeding, and the original restitution order are taken from our published opinion in a prior appeal in this case, *Koshak v. Malek* (2011) 200 Cal.App.4th 1540.

and Choice Providers alleging that Koshak was attempting to force Malek out of Choice Providers's business "so that [Koshak] would be able to steal the medical practice which [United and Malek had] supported through a difficult start-up period, just as [Choice Providers] turned a corner and [became] self-sustaining."

## B.     The Receivership and the Contempt Proceeding

In December 2008, with the acquiescence of Malek and Koshak, the trial court entered an order appointing David Pasternak as receiver (the receiver) to take possession, custody, and control over Choice Providers.  In December 2009, the receiver filed an ex parte application for the issuance of an amended order to show cause regarding contempt against Malek.[2]  The proposed amended order to show cause listed 29 different acts that allegedly violated the trial court's receivership order. In the ex parte application, the receiver requested, "in addition to any fines or imprisonment imposed upon [Malek], that he be ordered to pay the Receiver's reasonable attorneys' fees incurred in bringing this contempt proceeding."  Neither the ex parte application nor the proposed order made any reference to a request for an order requiring Malek to pay any other monies—much less $1.7 million in restitution that the trial court later ordered.

Following a three-week bench trial, the trial court found Malek guilty of 10 of the 29 contempt charges alleged in the amended order to show cause.  At the subsequent sentencing hearing, the trial court sentenced Malek on the 10 contempt convictions to five days in jail for each conviction, for a total of 50 days, and fined Malek $1,000 for each conviction, for a total fine of $10,000—i.e., the maximum amount of jail time and fines the trial court could impose under Code of Civil Procedure section 1218, subdivision (a), the section under which the receiver brought the contempt charges.  The trial court also ordered Malek to pay the receiver's attorney fees incurred in pursuing the contempt proceedings.

---

[2]     In June 2009, the receiver filed the original ex parte application for issuance of an order to show cause regarding contempt against Malek alleging that Malek was interfering with the receiver's administration of the receivership estate and the receiver's exercise of management and control over Choice Providers.

3

At the close of the sentencing hearing, the receiver requested that the trial court "consider any other available sanctions or punishments" to cause Malek to return the money he diverted from the receivership. Referring to its purported "independent authority to make sure that its orders are enforced," the trial court responded that it would "make a separate order . . . that [Malek] reimburse the receivership." The trial court then ordered as follows: "The court does however order that you pay or that you pay into the receiver estate the following sums: $650,000 which represents the amount the receiver showed was diverted from—into Care Point, in other words, that contract that you had with Care Point where you sold the receivables, plus interest in the amount of $84,767.12. [¶] $364,900–$364,948 plus $31,644.80 in interest according to the schedule that was introduced in the hearing by Mr. Lobuglio. [¶] And in addition, $580,281.67 was the amount shown to have been diverted by your own exhibits, plus interest in the amount of $64,517.34. [¶] The court orders that each of those sums be paid into the receivership estate. I'm not ordering that all that money doesn't belong to you. I'm simply ordering that you pay it into the receivership estate so that the receivership will have control of the money and they make disbursements back to you as that money is owed back to you. [¶] So some of it may come back, all of it may come back, that's going to be up to the receiver. That's what the receiver is there for. [¶] That money is due to the receiver on or before May 27, 2010." The trial court added, "In the event the money is not paid, we will hold an ability to pay hearing on the 28th [of May] . . . ." The trial court's restitution order was reflected in a minute order dated April 30, 2010. Malek filed a timely notice of appeal from the restitution order.

### C.     Appeal From the Restitution Order

On appeal, Malek argued, inter alia, that the entry of the restitution order without prior adequate notice and a fair opportunity to be heard violated his due process rights. In a published opinion, *Koshak v. Malek* , *supra*, 200 Cal.App.4th 1540, we agreed with Malek, reasoning as follows: "Under the due process clauses of the federal and state Constitutions, Malek was entitled to reasonable notice that, in addition to holding a

4

contempt proceeding, the trial court intended to rely on the evidence from that proceeding to also consider entering a restitution order in excess of $1 million. Malek, because he did not receive any such notice prior to the sentencing hearing, had no time to prepare a defense on the restitution issue, both as to entitlement and amount. Instead, Malek was required to address the restitution order for the first time *as it was being made* and without briefing or a separate hearing. Because the record does not demonstrate any extraordinary circumstances that would justify an exception to the requirements of due process, and the receiver does not assert any such circumstance, Malek was entitled to notice and a hearing. Accordingly, the trial court's failure to afford Malek those basic procedural rights prior to entering the restitution order—i.e., "the rudiments of fair play" (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 654 [183 Cal.Rptr. 508, 646 P.2d 179])—violated his due process rights and requires us to reverse that order. (See *In re Marriage of Carlsson* (2008) 163 Cal.App.4th 281, 293 [77 Cal.Rptr.3d 305] ["[t]he failure to accord a party litigant his constitutional right to due process is reversible per se, and not subject to the harmless error doctrine"]; see also *Kelly v. New West Federal Savings* (1996) 49 Cal.App.4th 659, 677 [56 Cal.Rptr.2d 803] ["where the error results in denial of a fair hearing, the error is reversible per se"].) [¶] . . .[¶] In making this determination, we do not decide whether Malek is obligated to make restitution based on the evidence adduced during the contempt proceeding, nor do we decide the amount of any such restitution obligation. Those are matters for the trial court to determine in the first instance at a duly noticed hearing scheduled for that specific purpose and following an adequate time period for briefing on those issues. [¶] . . . [¶] The restitution order is reversed, and the matter is remanded for further proceedings consistent with this opinion." (*Id.* at pp. 1549-1550, 1551.)

### D. Further Proceedings in the Trial Court

Following remand, the receiver filed a motion for an order requiring Malek to pay to the receivership estate funds he had diverted from the estate, plus interest, and for an order requiring Malek to pay the receiver's attorney fees and costs incurred in connection

5

with the contempt proceeding. Relying on the evidence introduced at the contempt proceeding concerning Malek's diversion of funds from the receivership estate, the receiver argued that the trial court had the inherent authority to enforce its own orders, including the receivership order requiring Malek to pay certain monies to the receivership estate.

At a January 2012, hearing on the motion, the trial court and Malek's counsel engaged in the following exchange: "The Court: . . . I don't see that the Court of Appeal was too concerned with the underlying proceeding other than the notice issue that has been mentioned by all counsel, and I don't take the Court of Appeal's decision to mean that we have to start over again from square one. That's my take on it. [¶] [Defense Counsel]: So that's what the Court of Appeal said. It said [Malek] didn't know about that, so how can that finding be? So then we jump forward to this hearing, your Honor, and what [the Receiver and Koshak] want to rely on is the findings made at the contempt hearing and the evidence presented at the contempt hearing, but that evidence, first, is not properly before this court because the only way that they're getting it here, it makes it hearsay and inadmissible, and the Evidence Code applies to every court proceeding, your Honor, not just trials, not just, you know, motions for summary judgment, but this hearing too. [¶] The Court: Well, if we had been ordered to retry the contempt hearing, then your argument might have some validity, but [the Court of Appeal] did not order that. [The Court of Appeal] just said that that portion of the hearing which requires your client to make this restitution was done without proper notice to your client sufficient[] to enable him to defend against the charge. That's all [the Court of Appeal] said. So that strikes me as being a far different thing than retrying the entire contempt matter. [¶] [Defense Counsel]: Nobody is asking the court to retry the—that's not what we're asking. What we're saying, even in any criminal proceeding, there is a restitution. It's a restitution matter. [¶] The Court: Yes. But the evidence that was adduced during the underlying contempt matter is admissible for that purpose. There is no rule that says that that which was admitted during the contempt proceeding cannot be admitted in the related restitution hearing. There is no such rule. [¶] . . . [¶] The

6

Court: Okay. Well, *if you need the opportunity to cross-examine any witness, then I intend to give you that opportunity, and if there is any other evidence that you feel that you need to present that you haven't already presented, then I intend to let you do that, and it's not going to happen this morning, but I am going to set this matter for further hearing, and I am going to give you the opportunity to introduce whatever evidence you wish, up to and including witnesses who have already testified to—on this issue of the restitution, and that's I believe what the Court of Appeal is requiring me to do.*" (Italics added.)

In February 2012, Malek made an ex parte application for an order requiring the receiver to identify the evidence in the record of the contempt proceeding on which the receiver would rely at the evidentiary hearing on the restitution issue. At the hearing on Malek's ex parte application, the trial court ruled that "counsel for [the] receiver [is] to reduce to letter form the portions of the transcript [of the contempt proceeding] they will be using." The trial court then continued the scheduled hearing on the restitution motion for approximately three weeks.

At the continued hearing on the restitution motion in April 2012, the trial court observed: "The Court: Well, the court—Judge Gutman, I believe—ordered the creation of this receivership, and Judge Latin found that [Malek] was in contempt of that order by diverting and withholding funds from the receivership. I believe that, whichever Judge had jurisdiction at the time, be it Judge Gutman, Judge Latin, or myself, whoever has the file has the inherent authority to order that funds wrongfully taken from the possession and control of the receiver be returned to the receiver. [¶] I believe the court has the inherent power to do that, and that would be how I would be prepared to act in this matter. I would be using the figures that Judge Latin derived during the contempt proceeding which were, apparently in large part, the basis for his finding of contempt."

In response to the trial court's inquiry as to how Malek's counsel would like to proceed, Malek's counsel stated: "[Defense Counsel]: As I understand it, the scope of this hearing is to prove up the amount of restitution because, as the Court of Appeal said, that was not an issue that was noticed for the contempt hearing. [¶] As I've requested,

7

they've given me a list of the parts of the transcript that they wish to introduce to prove that. Based on this, I'm willing to argue, based on this as admissible evidence for the amount of the restitution, I'm ready to go forward. [¶] Again, I have made previously an objection, and I will continue to make that objection that this is not the proper case for the prior testimony to be used. The prior testimony is inadmissible hearsay, and I've made that issue before. If you want me to make it again, I will, but I'd just as soon save my breath."

The trial court and Malek's counsel then had the following exchange: "The Court: All right. The court will take at face value Judge Latin's findings without prejudice, [defense counsel], to your ability to offer evidence to the contrary. [¶] [Defense Counsel]: Well, your Honor, that's not what we were going to do today. What we were going [to do] today is they're going to admit the testimony as their evidence. [¶] I don't think you can rely on what Judge Latin said. This is a separate proceeding. You are giving me a hearing in name only. They don't have to prove anything at this hearing. [¶] I think what they have to prove is very limited. What they have to prove is the amount of the restitution, that should be the restitution under, at least, the theory that's the amount of their actual loss, of Choice Providers' actual loss. And to just go back and do what Judge Latin says is really just giving me a hearing in name only."

The receiver's counsel stated his position concerning the restitution hearing as follows: "[Receiver's Counsel]: I said this before, and I wasn't trying to be funny, if [defense counsel] wants to know what the evidence is going to be that's relied upon by the receiver, I say we rest. [¶] We put it in. They didn't put anything in. They didn't have a brief today, and apparently, they don't have anything else to put in today either. This is all in argument."

Malek's counsel responded, "[Defense Counsel]: Your Honor, it misunderstands what the Court of Appeal is saying. . . . [¶] The Court of Appeal is saying that none of the issues before the court at the contempt [proceeding] had to do with the amount of damages. None of the remedies that the court could have awarded at the end of the contempt [proceeding] had to do with the award of the restitution or any kind of damages.

8

[¶] Therefore, my client did not have to either, A, put on a defense to those amounts or, B, object to things that were, in essence, irrelevant to the four issues before the court during the contempt hearing."

When the trial court reiterated that the hearing was Malek's opportunity to present evidence in opposition to the restitution motion, Malek's counsel stated: "[Defense Counsel]: I would go right to argument then, your Honor. And again, I object to any kind of former testimony being used."

Following argument, the trial court pronounced its ruling: "The Court: . . . So I'm going to adopt, in the absence of any math-based objection, [receiver's counsel]'s figure of $1,912,559.77 as being today's iteration of the total specified by Judge Latin back in 2010. [¶] . . . [¶] The court finds that the restitution is set in the amount of $1,912,559.77 as of today; that from this day forth, interest will accrue on that sum in the amount of $437.35 per day. [¶] Malek is ordered to make restitution to the receiver in the amount previously specified, the 1.9 million dollar figure that I just specified, and he is ordered to do that forthwith. And he's had at least two years to come up with that money which, in essence, was stolen from the receivership. [¶] And the court intends to enforce that order with its powers of contempt as necessary."

Following the hearing on the restitution issue, the trial court issued a minute order based on the oral pronouncement of its ruling on the restitution motion. Malek filed a timely notice of appeal from that order.

## DISCUSSION

### A. Standard of Review

Malek's procedural due process challenge to the trial court's order requiring him to make restitution to the receivership estate is reviewed de novo. "'Appellate courts conduct an independent review of questions of law; they decide them without deference to the decision made below.' (*Coburn v. Sievert* (2005) 133 Cal.App.4th 1483, 1492 [35 Cal.Rptr.3d 596].) Determining if the trial court adhered to a constitutional principle is

9

solely a question of law. (*California Assn. of Dispensing Opticians v. Pearle Vision Center, Inc.* (1983) 143 Cal.App.3d 419, 426 [191 Cal.Rptr. 762].) The issue of whether [a trial court complied with the mandates of] procedural due process . . . is a question of law. Therefore, we review this issue de novo." (*Conservatorship of Christopher A.* (2006) 139 Cal.App.4th 604, 609-610)

### B. Analysis

#### 1. Trial Court's Reliance on Findings Made at the Contempt Hearing

Malek contends that his due process rights were violated when the trial court relied on certain findings made at the contempt hearing. According to Malek, because he had no reason to cross-examine witnesses at the contempt hearing concerning the restitution issue, the findings made at the contempt hearing should not have been relied upon by the trial court in adjudicating the issues relevant to restitution.

Reduced to its essence, Malek's argument on appeal is that he was entitled to a new hearing on the restitution issue at which the receiver was required to call the same witnesses that he called at the contempt hearing and to reintroduce the same exhibits that he introduced at the contempt hearing. Malek misperceives our opinion in *Koshak v. Malek, supra,* 200 Cal.App.4th 1540 and the mandates of due process. Our concern on the appeal from the original restitution order was not that the trial court, in making the restitution order, relied on testimony and documents introduced at the contempt hearing. Our concern was that Malek had been given insufficient notice and denied a fair opportunity to be heard on the separate issue of restitution. We did not state or imply that it was improper for the trial court to rely on evidence from the contempt proceeding in making its restitution order. Instead, we explained that Malek had a right to challenge that evidence at a duly noticed hearing conducted for that specific purpose. Because the trial court afforded Malek a full and fair opportunity to call witnesses, cross-examine the receiver's witnesses, and to submit any other evidence that he wished to submit, it

10

complied with the directions in our opinion and the mandates of due process. Nothing further was required.

### 2. *Evidence Code Section 1291, Subdivision (a)(2)*

In a related contention, Malek argues that testimony from the contempt hearing was inadmissible at the restitution hearing as hearsay under Evidence Code section 1291, subdivision (a)(2) (section 1291, subdivision (a)(2)).[3] Malek argues that because he had no reason to cross-examine witnesses at the contempt hearing on the issue of restitution, section 1291, subdivision (a)(2) barred introduction of such prior testimony at the restitution hearing.

Malek's reliance on section 1291, subdivision (a)(2) is misplaced. The proceedings concerning the restitution issue were related to and an outgrowth of the contempt proceeding. Thus, the testimony from the contempt proceeding cannot be fairly characterized as "prior" testimony. Rather, that testimony served a dual purpose—it was the factual predicate for the requested contempt order and the restitution order. Because, as noted, the trial court afforded Malek a full and fair opportunity to cross-examine any of the receiver's witnesses concerning their direct testimony and the exhibits upon which such testimony was based, the rationale underlying section 1291, subdivision (a)(2) and the hearsay rule in general did not apply to the testimony of the receiver's witnesses. Thus, the trial court did not err in considering the testimony of the receiver's witnesses at the restitution hearing.

---

[3] Section 1291, subdivision (a)(2) provides: "(a) Evidence of former testimony is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and: [¶] . . . [¶] (2) The party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the hearing."

11

### 3. Restitution—the Penal Code

Malek contends that because the contempt proceeding was "criminal in nature," (see *Ross v. Superior Court* (1977) 19 Cal.3d 899, 913 ["contempt proceedings are quasi-criminal in nature"]) any restitution order based on the contempt proceeding should be governed by the mandates of the Penal Code. From Malek's perspective, because the proceedings on the restitution issue following remand did not comply with the procedural and evidentiary requirements for restitution in the criminal context, the restitution order must be reversed.

Following the sentencing in the contempt proceeding, the trial court considered the receiver's separate request for a restitution order, not under the Penal Code, but rather under the trial court's inherent power to issue orders to enforce its prior rulings. In making the original restitution order, the trial court specifically referred to and relied upon its inherent power to make such orders. Similarly, in the restitution proceedings following remand, the trial court also made reference to its inherent power to make such orders as are necessary to enforce prior orders. Therefore, neither court considered the restitution issue in the criminal context, nor were they required to.

"The [trial] court . . . has the inherent authority to order compliance with its rulings. '"The power to enforce their decrees is necessarily incident to the jurisdiction of courts. Without such power, a decree would, in many cases, be useless. 'All courts have this power, and must necessarily have it; otherwise they could not protect themselves from insult, or enforce obedience to their process. Without it, they would be utterly powerless.'"' (*Security T. & S. Bk. v. S. P. R. R. Co.* (1935) 6 Cal.App.2d 585, 589 [45 P.2d 268]; see Code Civ. Proc., § 128, subd. (a)(4) [codification of inherent power].)" (*Branson v. Sharp Healthcare, Inc.* (2011) 193 Cal.App.4th 1467, 1476, fn. 4.) The Supreme Court has said that "a court of equity may exercise the full range of its inherent powers in order to accomplish complete justice between the parties, restoring if necessary the *status quo ante* as nearly as may be achieved." (*People v. Superior Court (Jayhill)* (1973) 9 Cal.3d 283, 286 [restitution].)

12

Here, the trial court in the contempt proceeding made specific findings that Malek had violated its orders under the receivership to pay certain funds to the receivership estate. Thus, the trial court had the inherent authority to make such further orders as were necessary to compel Malek to comply with those prior receivership orders. Because, as discussed, the trial court on remand afforded Malek a full and fair opportunity to challenge the receiver's request for a restitution order, the subsequent entry of the restitution order was well within the court's inherent power to compel Malek's compliance with its prior receivership orders. Under these circumstances, the mandates of the Penal Code concerning restitution in the criminal context were not applicable.[4]

## DISPOSITON

The trial court's restitution order is affirmed. Koshak is awarded costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MOSK, J.

We concur:

TURNER, P. J.

KRIEGLER, J.

---

[4] In his reply brief, Malek asserts for the first time that Koshak and Choice Providers lack standing to respond to this appeal. We do not consider arguments raised for the first time in a reply brief. (See *Estate of Bonzi* (2013) 216 Cal.App.4th 1085, 1106, fn. 6.) In any event, Koshak and Choice Providers have a direct interest in the funds subject to the restitution order and therefore have standing on appeal to respond to Malek's challenges to that order. (See *Vitug v. Griffin* (1989) 214 Cal.App.3d 488, 496.)

13