Filed 6/21/24  Sotelo v. Performance Contracting Group CA1/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JORGE SOTELO, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> PERFORMANCE CONTRACTING GROUP, INC., <br><br> Defendant and Respondent. | A165880 <br><br> (San Francisco County Super. Ct. No. CGC-21-591426) |

Jorge Sotelo appeals from an order compelling him to arbitrate his individual wage and hour claims against his former employer and dismissing his class action and California Private Attorney General (PAGA) lawsuit. Sotelo claims reversal is required because his former employer waived its right to invoke arbitration.  We affirm.

## BACKGROUND

Sotelo worked for Performance Contracting, Inc. (PCI), a subsidiary of Performance Contracting Group (PCG), as a union carpenter from January 13, 2020 to February 25, 2020.  Through his union, Sotelo agreed to arbitrate any individual wage and hour claims and to waive any class claims; he also agreed to a mandatory grievance procedure and to waive PAGA claims.

On May 4, 2021, Sotelo filed a class action complaint against PCG, alleging violations of state wage and hour laws and unfair competition.  In its

1

June 17, 2021 answer, PCG raised arbitration and the mandatory grievance procedure as affirmative defenses. On July 2, 2021, PCG filed a request for a jury trial.

On August 20, 2021, PCG stipulated to Sotelo filing a first amended complaint, which added a PAGA claim; the first amended complaint was filed on October 22, 2021. PCG answered on November 17, 2021, and it again raised arbitration and the mandatory grievance procedure as affirmative defenses.

In preparation for case management conferences, PCG served Sotelo with form case management statements (CMS) on November 2, 2021 and February 17, 2022. In both forms, PCG indicated it intended to move to compel arbitration, but PCG did not check the box indicating that it was "willing to participate in . . . h[ad] agreed to participate in or already completed" binding private arbitration. (Original boldface omitted.)

On January 24, 2022, PCG served Sotelo with an application for a complex case designation. "In its application [PCG] indicated that [Sotelo] is subject to a binding arbitration and class waiver pursuant to a Collective Bargaining Agreement, and [PCG] intends to compel arbitration." On January 27, PCG produced the applicable documents containing the arbitration agreement. Also on January 27, PCG served its discovery responses to the interrogatories and requests for production propounded by Sotelo.[1]

The case was designated complex on April 8, 2022. On April 13, PCG sent a letter to Sotelo advising him his claims were subject to binding

---

[1] PCG noticed Sotelo's deposition in a separate case. The deposition notice, which also demanded production of documents, was subsequently withdrawn.

2

arbitration and a class waiver. PCG demanded that Sotelo dismiss the lawsuit or it would move to compel arbitration.

On June 3, 2022, PCG filed its motion to compel arbitration and to dismiss Sotelo's class and PAGA claims, which the trial court granted on July 12. In granting the motion to compel arbitration, the court found: PCG had not acted inconsistently with its right to arbitration by "[m]erely participating in litigation;" the "litigation machinery" had not been invoked and the parties were not far into litigation; PCG's delay in asserting its right to arbitrate was not " 'unreasonable' "merely because it could have asserted it at an earlier time; PCG did not take advantage of judicial discovery procedures unavailable in arbitration; and PCG did not file a cross-complaint.

This timely appeal followed.

## DISCUSSION

Before delving into the merits of Sotelo's claim, we address three critical issues that provide the contours of our review—appealability, standard of review, and applicable law.

### I. Appealability

A threshold question is whether the order compelling Sotelo to arbitrate his individual claims is immediately appealable. Because appealability implicates our jurisdiction, we review the issue on our own motion. (*Olson v. Cory* (1983) 35 Cal.3d 390, 398; *Koshak v. Malek* (2011) 200 Cal.App.4th 1540, 1544.)

Normally, an order compelling arbitration may be challenged only in an appeal from the ensuing judgment. (*Nelsen v. Legacy Partners Residential, Inc.* (2012) 207 Cal.App.4th 1115, 1121–1122.) But an exception to this rule is found in the death knell doctrine. According to this doctrine, " 'an order which allows a plaintiff to pursue individual claims, but prevents the plaintiff

3

from maintaining the claims as a class action, . . . is immediately appealable because it "effectively r[ings] the death knell for the class claims." ' " (*Miranda v. Anderson Enterprises, Inc.* (2015) 241 Cal.App.4th 196, 200; accord in *In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 759.) An order directing a plaintiff to arbitrate his or her claims individually, rather than pursuing class claims in court, falls within the scope of the death knell doctrine. (*Phillips v. Sprint PCS* (2012) 209 Cal.App.4th 758, 766.)

Here, the trial court dismissed Sotelo's class claims with prejudice. This order was immediately appealable under the death knell doctrine.

## II.  Standard of Review

Sotelo seeks to obtain de novo review of the order granting PCG's motion to compel arbitration, claiming the facts are not disputed and thus we are free to substitute our view for that of the trial court. PCG contends the facts are disputed, thereby requiring application of the substantial evidence standard of review. We agree with PCG.

In *Davis v. Shiekh Shoes* (2022) 84 Cal.App.5th 968, 962 (*Davis*), we set forth the applicable standard of review, quoting *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1996 (*St. Agnes*), as follows: " 'Generally, the determination of waiver is a question of fact, and the trial court's finding, if supported by sufficient evidence, is binding on the appellate court. [Citations.] "When, however, the facts are undisputed and only one inference may reasonably be drawn, the issue is one of law and the reviewing court is not bound by the trial court's ruling." ' "

Here, as in *Davis*, "the essential facts may not be in dispute, in the sense that no one doubts that party X did or did not do act Y on date Z. Nevertheless, even if there is no difference in opinion on such events or non-occurrences, the inferences to be drawn from the essential facts are

4

conflicting. And where conflicting inferences may be drawn, the issue is reduced to whether the trial court's finding of waiver is supported by substantial evidence. [Citations.] In conducting that standard of review, '[w]e infer all necessary findings supported by substantial evidence [citations] and "construe any reasonable inference in the manner most favorable to the [ruling], resolving all ambiguities to support an Affirmance." ' " (*Davis*, *supra*, 84 Cal.App.5th at pp. 962–963.)

### III.  Applicable Law

We next determine whether the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) or California law governs the inquiry into whether PCG has waived its right to arbitration. Although addressed below, neither party squarely addresses this issue on appeal.

The FAA applies to contracts that involve interstate commerce. (9 U.S.C. §§ 1, 2.) The FAA applies to an arbitration agreement when "the 'transaction' in fact 'involv[es]' interstate commerce, even if the parties did not contemplate an interstate commerce connection." (*Allied-Bruce Terminix Companies, Inc. v. Dobson* (1995) 513 U.S. 265, 281–282 [transaction involved interstate commerce given "the multistate nature of Terminix and Allied-Bruce," and "termite-treating and house-repairing materials used by Allied-Bruce" came from out of state].)

The trial court determined the FAA applied, given the "undisputed evidence" that PCI (PCG's subsidiary that employed Sotelo) is " 'multi-state' in nature, purchases materials from other states," and Sotelo performed

5

services offered by PCI, such that the employment agreement " 'in fact' " involved interstate commerce.[2] We agree that the FAA controls.

"Courts have recognized that where the FAA applies, whether a party has waived a right to arbitrate is a matter of federal, not state, law." (*Davis, supra,* 84 Cal.App.5th at pp. 963–964.) There is no single test under state or federal law that delineates the nature of conduct that will constitute a waiver of arbitration. (*St. Agnes, supra,* 31 Cal.4th at p. 1196.) Instead, courts apply the multi-factor test articulated in *St. Agnes,* which the California Supreme Court adopted from the Tenth Circuit in *Peterson v. Shearson/American Express, Inc.* (10th Cir. 1988) 849 F.2d 464 (*Peterson*). The following factors are relevant in assessing waiver claims: " ' "(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party." ' " (*St. Agnes,* at p. 1196, quoting *Sobremonte v. Superior Court* (1998) 61 Cal.App.4th 980, 992 [in turn quoting *Peterson*].) " 'The essential question is whether, under the totality of the circumstances, the defaulting party has acted inconsistently

---

[2] The evidence reviewed by the trial court and mentioned in its ruling is not included in the record on appeal; Sotelo, however, does not appear to dispute this aspect of the court's ruling.

6

with the arbitration right.' " (*Davis*, at p. 964, quoting *National Foundation for Cancer Research v. A.G. Edwards & Sons, Inc.* (D.C. Cir. 1987) 821 F.2d 772, 774.)

Until recently, there was "no meaningful difference between waiver principles under the FAA or California law as they apply to agreements to arbitrate." (*Bower v. Inter-Con Security Systems, Inc.* (2014) 232 Cal.App.4th 1035, 1041; see also *Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205 Cal.App.4th 436, 444–445 [finding that under federal and state law "courts apply the same standards in determining waiver claims"].) In *Morgan v. Sundance, Inc.* (2022) 596 U.S. 411, 416 (*Morgan*) the United States Supreme Court rejected the invocation of " 'the strong federal policy favoring arbitration' " as "support of an arbitration-specific waiver rule demanding a showing of prejudice." Rather, to determine whether a waiver has occurred in the arbitration context, as with any waiver of a contractual right, "the court focuses on the actions of the person who held the right; the court seldom considers the effects of those actions on the opposing party." (*Id.* at p. 417.) The high court further clarified, "a court must hold a party to its arbitration contract just as the court would to any other kind. But a court may not devise novel rules to favor arbitration over litigation."[3] (*Id.* at p. 418.)

With these principles in mind, we turn to the merits of Sotelo's claim, and conclude it fails.

---

[3] The California Supreme Court has not yet addressed *Morgan*. Thus, it has not spoken on whether prejudice remains a "critical" consideration in the waiver inquiry under California law, as it held prior to *Morgan*. (See *St. Agnes*, *supra*, 31 Cal.4th at pp. 1203–1204.) (A petition for review has been granted in *Quach v. California Commerce Club, Inc.* (2022) 78 Cal.App.5th 470, review granted Aug. 24, 2022, S275121, regarding the effect of *Morgan*, if any, on *St. Agnes*.)

7

## IV. The Trial Court Properly Granted the Motion to Compel Arbitration

Preliminarily, to the extent Sotelo attempts to attach a "prejudice" component to the trial court's rulings, the record reveals otherwise. When the trial court ruled on PCG's motion to compel arbitration, it *expressly* acknowledged and applied the Supreme Court's decision in *Morgan*: "Consistent with *Morgan*, the court's analysis of the waiver issue . . . focuses on [PGC's] conduct, not any prejudice to [Sotelo]."

Consequently, the court found PCG had not waived its right to invoke arbitration because its actions were "not inconsistent[] with the right to arbitrate"; its "actions were consistent with 'merely participating in litigation' "; its limited participation in the litigation had not invoked the "litigation machinery"; it did not take advantage of any judicial discovery procedures unavailable in arbitration; and its year-long delay was not unreasonable simply because it could have asserted its right at an earlier time—rather, PCG " 'merely participat[ed] in litigation' in the year leading up to its motion."

Substantial evidence supports the court's findings. Although a year had elapsed between the filing of the initial complaint and the motion to compel arbitration, during the intervening period, PCG consistently asserted its right to arbitration. Two months after Sotelo's initial May 2021 complaint, PCG raised the parties' arbitration agreement as an affirmative defense in its July 2021 answer. Less than six months later, in November 2022, PCG reiterated Sotelo's claims were subject to arbitration in its first CMS and in its answer to the first amended complaint. In January 2022, PCG sought a complex case designation and stated it would be seeking to compel arbitration. In its February 2022 CMS, PCG again indicated Sotelo's claims were subject to arbitration. Following the April 8 complex case

8

designation, PCG sent a letter to Sotelo on April 13, again advising Sotelo that his claims were subject to arbitration and offered him the opportunity to dismiss his claims in exchange for a waiver of costs so that he could pursue his claims with his union. When Sotelo failed to dismiss his claims, PCG filed its motion to compel arbitration on June 3. Substantial evidence supports the court's finding that PCG had a reasonable explanation for its delay in demanding arbitration. (See *Davis*, *supra*, 84 Cal.App.5th at p. 969.)

The record also supports the court's finding that PCG's conduct was consistent with its right to arbitrate. Although it made various procedural filings in the time leading up to its motion to compel, PCG was "merely participating in litigation" (*St. Agnes*, *supra*, 31 Cal.4th at p. 1203), with an eye toward "preserving its rights to a jury trial and discovery" (*Davis*, *supra*, 84 Cal.App.5th at p. 970), in the event its motion proved unsuccessful (*ibid.*). PCG did not demonstrate "an intentional decision not to move to compel arbitration," and it did not " 'actively litigate[] the merits of [the] case for a prolonged period of time in order to take advantage of being in court.' " (*Armstrong v. Michaels Stores, Inc.* (9thCir. 2023) 59 F.4th 1011, 1015.)

Substantial evidence also supports the court's finding that "the litigation machinery ha[d] not been substantially invoked and the parties were not far into litigation." As the court correctly noted, there had "been no motion, no decisions on the merits, or judicial intervention" in this case. Moreover, the parties had engaged in what the trial court aptly described as "limited discovery." The discovery included PCG's attempt to depose Sotelo and its responses to the written discovery propounded by Sotelo. (See *Quach v. California Commerce Club, Inc.*, *supra*, 78 Cal.App.5th at p. 479, review granted [no waiver by defendant where its participation was limited to party-

9

directed discovery without court involvement or determinations on the merits].)  This discovery would have also been available in arbitration.

Finally, although PCG requested a jury trial, no trial date was ever set or anticipated.  As discussed in the preceding sections, PCG merely participated in litigation in order to preserve its rights to a jury trial and ability to conduct discovery in the event its motion proved unsuccessful, all the while expressing its intent to seek arbitration.  PCG "never wavered from the view that it had a right to arbitration," as evidenced by it moving to compel arbitration approximately a year after Sotelo filed the complaint, never seeking or obtaining a ruling on the merits, and "never waffling about whether to arbitrate" or to maintain the state court action.  (*Armstrong v. Michaels Stores, Inc.*, *supra*, 59 F.4th at p. 1016.)

Considering the totality of the circumstances, we conclude substantial evidence supports the court's determination that PCG had not waived its arbitration rights.  Accordingly, the court properly granted PCG's motion to compel arbitration.

## DISPOSITION

The judgment is affirmed.  PCG is entitled to recover its costs on appeal.

_____
Mayfield, J.*

We concur:

_____
Stewart, P. J.

_____
Miller, J.

*Sotelo v. Performance Contracting Group, Inc.* (A165880)

* Judge of the Mendocino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11