Filed 1/2/14  P. v. Elmachtoub CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H038439 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. SS120706A) |
| v. | |
| SAMIR ASSIR ELMACHTOUB, | |
| Defendant and Appellant. | |

THE COURT:

The above captioned opinion, filed on December 4, 2013, is hereby modified as follows:  On page 18 of the opinion, at the end of Section II, insert the following two paragraphs:

Defendant further argues that his trial counsel provided ineffective assistance by failing to object to the protective order on the basis that it is unconstitutionally overbroad and vague in violation his rights to due process, freedom of association, free speech, and freedom of travel.  Defendant asserts that counsel's failure to object on these grounds was prejudicial because there is a reasonable probability the trial court would have modified the order had counsel objected.  In his opening brief, defendant offers no further argument and cites to nothing in the record in support of this claim.  He only briefly considers the issue of prejudice in his reply brief.

Defendant's burden on appeal includes making reasoned arguments with citation to authority on each point raised. (*Niko v. Foreman* (2006) 144 Cal.App.4th 344, 368.) This requires more than making a bare assertion that counsel's failure to object was prejudicial. Defendant has therefore waived his ineffective assistance of counsel claim. (*Stanley*, *supra*, 10 Cal.4th at p. 793.) But even were we to consider his claims on the merits, we find defendant has not met his burden of showing prejudice under *Strickland*, and we deny this claim.

There is no change in the judgment.

The petition for rehearing is denied.

_____
MÁRQUEZ, J.

_____
ELIA, ACTING P.J.

_____
BAMATTRE-MANOUKIAN, J.

Filed 12/4/13 (unmodified version)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>SAMIR ASSIR ELMACHTOUB,<br><br>　　Defendant and Appellant. | H038439<br>(Monterey County<br>Super. Ct. No. SS120706) |

Defendant Samir Assir Elmachtoub pleaded no contest to infliction of corporal injury on a cohabitant. (Pen. Code, § 273.5, subd. (a).)[1] The trial court imposed a term of two years in state prison. The court also issued a three-year protective order under section 136.2, subdivision (i), enjoining contact with the victim and imposing other conditions. Defendant asserts numerous claims of error pertaining to the protective order, including procedural due process claims, lack of statutory authority, vagueness, overbreadth, and constitutional violations of his rights to freedom of association, speech, and travel.

Section 136.2, subdivision (i) authorizes the court to issue an order "restraining the defendant from any contact with the victim." Looking to the plain meaning of this language, the prohibited conduct must involve touching, meeting or communication between defendant and the victim, directly or indirectly. We conclude that one condition

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

of the protective order—prohibiting defendant from damaging or destroying the victim's property—enjoined some conduct not covered by this language to the extent such conduct does not involve communication with the victim. A second condition ostensibly imposed by the minute order—prohibiting defendant from preventing the victim or witnesses from attending hearings or making reports to law enforcement—was absent from the oral pronouncement, and hence improperly added to the protective order. We strike the latter condition from the protective order, and we modify the former condition to enjoin damaging or destroying the victim's property with the intent to frighten, intimidate, harass, or annoy her. We further modify the order to enjoin only willful, knowing contact, either direct or indirect, with the victim. As modified, we affirm the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 16, 2012, at 3:11 a.m., Monterey police officers arrived at defendant's residence to investigate an altercation between defendant and his live-in girlfriend, Elizabeth S.[2] Defendant told police that Elizabeth S. struck him with her vehicle before driving away. Defendant had abrasions on his knee, ankle, and foot. Police issued a "be on the lookout" for the vehicle.

Defendant gave the following statement to police: He and Elizabeth S. had been in an on-and-off relationship for the past year, and they had recently broken up for about two months. Defendant was with another female friend when Elizabeth S. arrived. She and defendant got into an argument, and the other woman left. Elizabeth S. slapped him several times on the face and called him derogatory names. When she tried to leave, he went outside to talk to her. As she was driving away, she struck his leg with the front of her vehicle, causing him to roll over the hood and fall onto the street. He then called 911

---

[2] The facts are taken from the probation report, which is based on the police report. The parties stipulated to the police report as the factual basis for the plea.

2

to request medical attention.  Police noted that defendant was vague at times, and he made conflicting statements about the circumstances of Elizabeth S.'s departure.

When police found Elizabeth S., she had bruising and redness on her forehead. She told police that defendant had hit her, and that he hid her purse and keys for about half an hour to prevent her from leaving.  She stated that she did not have her headlights on as she was driving away, and that defendant ran in front of her vehicle before she could avoid him.  She then denied that defendant hit her, and she refused to let police photograph her forehead.  Police noted that she too made conflicting statements about the incident.

Police arrested both defendant and Elizabeth S.  While in custody, Elizabeth S. broke down in tears and decided to talk to police again.  She showed them several bruises on her arm, shoulder, and back, which she said defendant had inflicted on her a few days before.  She described further details of the latest altercation.  She said the injury to her forehead was caused when defendant bit her.  Police confirmed that the injury was a bite mark.  She had a second bite mark on her arm.  She said she did not previously tell police about the injuries because she loved defendant, and she did not want him to get into trouble.

A felony complaint charged defendant with two counts of inflicting corporal injury on a cohabitant and one count of false imprisonment by violence.  (§ 273.5, subd. (a), § 236.)  The complaint alleged a prior conviction for battery on a person who was a cohabitant under section 273.5.  (§243, subd. (e).)  The complaint further alleged defendant had served a prior prison term under section 667.5 as the result of a felony conviction for transportation or sale of a controlled substance.  (Health & Saf. Code, § 11352, subd. (a).)  At his arraignment, the court issued a protective order "pending trial" under subdivision (a) of section 136.2 that, inter alia, enjoined defendant from contacting Elizabeth S.

3

Defendant pleaded no contest to one count of inflicting corporal injury on a cohabitant. After entry of plea, Elizabeth S. asked the court to modify the protective order to allow phone contact and jailhouse visits with defendant. The court denied her request, citing concern for her safety. She asked if there would be an opportunity for her to request modification again, and the court referred her to the district attorney's domestic violence program.

At sentencing, the trial court imposed a term of two years in state prison, as stipulated by the parties. At the hearing, Elizabeth S. stated that the situation had gotten "out of control" but that she loved defendant and thought they could "take control" of the situation with help from counseling. Defendant apologized and echoed her statement that the situation "got out of hand."

The probation report made no mention of a post-conviction protective order. However, after specifying the terms of the sentence, the court asked the prosecutor whether she was requesting a "continuing protective order," and the prosecutor responded affirmatively. The court then orally issued a three-year protective order, ordering defendant "that you not have any contacts at all with Elizabeth [S.]. Don't call, don't email, don't text her, don't send her any letters, don't have any third party contact her on your behalf. You are to stay at least a hundred yards away from her, her place of employment, anyplace she's living. You are not to harass, strike, threaten, assault, damage or destroy any of her property, and you are to surrender to local law enforcement any firearms that you do have."

Defendant then reminded the court that Elizabeth S. had previously requested modification of the protective order. The court again heard from Elizabeth S. She told the court she had completed domestic violence counseling, and she passionately pleaded for removal of the protective order. The court, denying her request, stated, "He needs down time," and "I think it's important for both of you to have time apart."

4

The minute order cites section 136.2 as the basis for the protective order. The minute order states, in relevant part, that defendant "[m]ust not annoy, harass, strike, threaten, sexually assault, batter, stalk, destroy personal property of, or otherwise disturb the peace of [Elizabeth S.]. [. . .] Must have no personal, telephonic or written contact with [Elizabeth S.]. Must have no contact with [Elizabeth S.] through a third party, except an attorney of record. [. . .] Must not come within 100 yards of [Elizabeth S.]." These terms were substantially the same as those of the "pending trial" protective order imposed at defendant's arraignment.

## II. DISCUSSION

Defendant contends the three-year protective order was issued in error for the following reasons: (1) defendant received inadequate notice and no opportunity to be heard; (2) defense counsel provided ineffective assistance for failure to object to the lack of notice; (3) certain conditions of the order are unauthorized by the applicable statute; (4) the minute order improperly imposed conditions not set forth in the oral pronouncement; (5) the order is overbroad in violation of his federal and state constitutional rights to freedom of association, freedom of speech, and freedom of travel; and (6) the order is overbroad and vague in various respects. Respondent argues that defendant waived his claims by failing to object on these grounds below. We consider the waiver argument first.

### A. *Waiver*

Defendant raises all his claims for the first time on appeal. Trial counsel lodged no objections to the protective order in the trial court. Respondent contends defendant has thereby forfeited his right to raise these claims on appeal.

A defendant may forfeit a claim that his rights were violated by the failure to timely assert the right before a court having jurisdiction to determine it. (*Henderson v. United States* (2013) 133 S.Ct. 1121, 1126.) " 'The purpose of the general doctrine of waiver is to encourage a defendant to bring errors to the attention of the trial court, so that

5

they may be corrected or avoided [. . . .]' " (*People v. Saunders* (1993) 5 Cal.4th 580, 590 [quoting *People v. Melton* (1990) 218 Cal.App.3d 1406, 1409].) As a general matter, this doctrine extends to due process claims. (*People v. Heard* (2003) 31 Cal.4th 946, 972, fn. 12.)

However, "[n]ot all claims of error are prohibited in the absence of a timely objection in the trial court." (*People v. Vera* (1997) 15 Cal.4th 269, 276 [abrogated on another point in *Apprendi v. New Jersey* (2000) 530 U.S. 466].) "A defendant is not precluded from raising for the first time on appeal a claim asserting the deprivation of certain fundamental, constitutional rights." (*Ibid.*) Reviewing courts have held that the forfeiture rule does not extend to constitutional challenges that present pure questions of law. (*In re Sheena K.* (2007) 40 Cal.4th 875, 884.) Such challenges "do[] not require scrutiny of individual facts and circumstances but instead require[] the review of abstract and generalized legal concepts—a task that is well suited to the role of an appellate court [. . .] [This] may save the time and government resources that otherwise would be expended in attempting to enforce a condition that is invalid as a matter of law." (*Id.* at p. 885.) Another exception to the waiver rule includes unauthorized sentences and sentences entered in excess of jurisdiction. (*People v. Smith* (2001) 24 Cal.4th 849, 852).

We conclude defendant has not forfeited his due process claim, his claim regarding the minute order, the claim that that the protective order was not authorized by the statute, and the claims of overbreadth and vagueness. These claims raise questions of pure law that can be addressed without resolving factual disputes. The claim concerning the scope of the statute also raises doubt about whether the sentence was unauthorized or outside the jurisdiction of the trial court. (*People v. Ponce* (2009) 173 Cal.App.4th 378, 381 [no waiver where protective order under section 136.2 was outside court's jurisdiction].) Therefore, we address the merits of these claims on appeal. However, as to the claims that the protective order violated his constitutional rights to freedom of speech, freedom of association, and freedom of travel, the failure to raise these claims

6

below constitutes a waiver.  (*People v. Clayburg* (2012) 211 Cal.App.4th 86, 93 [defendant's claims that a restraining order violated her First Amendment freedom of association and freedom of speech were forfeited by failure to raise them below].)

B.  *Standards of Review*

We review procedural due process claims de novo because "the ultimate determination of procedural fairness amounts to a question of law."  (*Nasha v. City of Los Angeles* (2004) 125 Cal.App.4th 470, 482.)  Similarly, the question whether the order was authorized under the statute, as a matter of statutory interpretation, is reviewed de novo.  (*Babalola v. Superior Court* (2011) 192 Cal.App.4th 948, 956 (*Babalola*).)

"To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense.  [Citations.]  Counsel's performance was deficient if the representation fell below an objective standard of reasonableness under prevailing professional norms.  [Citation.]  Prejudice exists where there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different."  (*People v. Benavides* (2005) 35 Cal.4th 69, 92-93, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 693-694.)  " 'Finally, prejudice must be affirmatively proved; the record must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." ' "  (*Id.* at p. 703.)  "It is the defendant's burden on appeal [. . .] to show that he or she was denied effective assistance of counsel and is entitled to relief. [Citations.]  '[T]he burden of proof that the defendant must meet in order to establish his [or her] entitlement to relief on an ineffective-assistance claim is preponderance of the evidence.' [Citation.]"  (*In re Hill* (2011) 198 Cal.App.4th 1008, 1016.)

7

C. *Notice and Opportunity to Be Heard*

Defendant contends he did not receive adequate notice or a meaningful opportunity to be heard prior to imposition of the protective order. Defendant further argues that trial counsel was ineffective for failing to object on this basis. Respondent argues that defendant received adequate notice via the language of the statute and by the fact that a protective order had already been issued. We conclude that defendant received adequate notice, and that the sentencing hearing afforded him a meaningful opportunity to be heard.

As a general matter, criminal defendants have due process rights to advance notice and a meaningful opportunity to be heard before any deprivation of a constitutionally protected interest. "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.' " (*Koshak v. Malek* (2011) 200 Cal.App.4th 1540, 1547 [quoting *Mullane v. Central Hanover Bank & Trust Co.* (1950) 339 U.S. 306, 313].) "The essential requirements of due process [. . .] are notice and an opportunity to respond." (*Cleveland Bd. of Educ. v. Loudermill* (1985) 470 U.S. 532, 546.) "The very purpose of giving the parties notice and the opportunity to be heard is to give them a chance to present information that may affect the decision." (*In re Large* (2007) 41 Cal.4th 538, 552.) These principles apply specifically to the imposition of a criminal protective order under section 136.2. (*Babalola*, *supra*, 192 Cal.App.4th at p. 965.) Defendant contends that the court violated the requirements of *Babalola* by failing to provide him with advance notice so he could prepare for the hearing.

In *Babalola*, the trial court had vacated the criminal protective order at issue, but the court of appeal offered "a few general observations" on the trial court proceedings. (*Babalola, supra,* at p. 965.) Babalola committed the offense in November 2009, and he was charged in February 2010. Pretrial proceedings were held in March, April and May

8

2010. The court observed, "No application for a protective order was made at those pretrial hearings, and no evidence was presented that any emergency existed in late June 2010 when the prosecutor finally submitted the request. Babalola was entitled at minimum to some notice that the request was going to be made so he could prepare for the hearing." (*Ibid.*)

The proceedings here differed substantially from those in *Babalola*. The trial court first imposed a nearly identical protective order at defendant's arraignment, "pending trial." That protective order was still in place at the time of his sentencing hearing. These facts alone provided defendant with some notice that the protective order would again be at issue.

Furthermore, defendant was given explicit notice that the protective order would be at issue because statutory language required the sentencing court to consider it. Defendant pleaded no contest to infliction of corporal injury on a spouse under section 273.5, which states that "the sentencing court *shall also consider* issuing an order restraining the defendant from any contact with the victim, which may be valid for up to 10 years, as determined by the court." (§ 273.5, subd. (i).) (Italics added.) Similarly, section 136.2 provides that "[i]n all cases in which a criminal defendant has been convicted of a crime of domestic violence as defined in Section 13700, *the court, at the time of sentencing, shall consider* issuing an order restraining the defendant from any contact with the victim." (§ 136.2, subd. (i).) (Italics added.) Neither of these provisions were at issue in *Babalola*; Babalola was not charged under section 273.5, and the relevant language of section 136.2 was not added to that statute until 2012. *Babalola* is therefore inapposite.

We conclude that the history of the proceedings and the statutory language of sections 273.5 and 136.2 provided defendant with adequate notice that the protective order would be at issue in his sentencing hearing.

9

Defendant also argues that he was not provided with a meaningful opportunity to be heard on the matter. The transcript of the sentencing hearing shows otherwise. Indeed, defendant offered the testimony of the victim, who pleaded with the court not to impose the order. Nothing prevented defendant from offering any other testimony or evidence in opposition to the order.

For these same reasons, defense counsel did not provide ineffective assistance of counsel by failing to object. There being no lack of notice or opportunity to be heard, an objection would have been meritless. "Counsel is not required to proffer futile objections." (*People v. Anderson* (2001) 25 Cal.4th 543, 587.) Nor can defendant meet his burden of showing he was prejudiced by counsel's performance at the sentencing hearing. Given that the victim's impassioned plea failed to convince the judge not to impose the order, it is unlikely that testimony from the defendant or any other witness would have done so. Defendant points to no evidence counsel could have offered that might have resulted in a different outcome.

Accordingly, we reject defendant's claims regarding inadequate notice, lack of opportunity to be heard, and the related claim of ineffective assistance of counsel.

D. *Statutory Authority for the Order*

Defendant contends several conditions of the protective order exceed the statutory authority for the order. First, defendant argues that the sole authority for the protective order is found in subdivision (i) of section 136.2, which authorizes the court to enjoin a defendant from "any contact with the victim." A separate subdivision of section 136.2—subdivision (a)—grants a trial court the authority to enjoin all of the conduct disputed by defendant here. However, courts have construed that section of the statute to authorize protective orders "only during the pendency of the criminal action in which they are issued. . . ." (*People v. Stone* (2004) 123 Cal.App.4th 153, 159.) In response, the

10

Legislature enacted subdivision (i), effective January 1, 2012. (Stats. 2011, ch. 155, § 1.) According to the minute order, the court's order was based on section 136.2.[3]

Defendant contends that the phrase "any contact with the victim" in subdivision (i) does not authorize the court to enjoin defendant from: (1) coming with 100 yards of the victim; (2) annoying, stalking, damaging or destroying property, or disturbing the peace of the victim; or (3) preventing or dissuading non-victim witnesses from testifying or making a report. Defendant argues that these forms of conduct do not constitute "contact" according to the plain meaning of that word.

Defendant's claim raises an issue of statutory construction. "The basic rules of statutory construction are well established. 'When construing a statute, a court seeks to determine and give effect to the intent of the enacting legislative body.' [Citation.] " 'We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context." [Citation.] If the plain, commonsense meaning of a statute's words is unambiguous, the plain meaning controls.' " (*People v. King* (2006) 38 Cal.4th 617, 622.)

"In doing so, however, we do not consider the statutory language in isolation. [Citation.] Rather, we look to 'the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . .' [Citation.] We avoid any construction that would produce absurd consequences." (*Flannery v. Prentice* (2001) 26 Cal.4th 572, 578.) Furthermore, in construing the language of the Penal Code, we do not do so strictly, but with an eye towards justice. "The rule of the common law, that penal statutes are to be strictly construed, has no application to this Code. All its provisions are

---

[3] Respondent contends the protective order could also be authorized under section 273.5, subdivision (i). The point is moot, since the language of both statutes is identical in all relevant respects.

11

to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice." (§ 4; *People v. King* (1978) 22 Cal.3d 12, 23.)

Section 136.2, subdivision (i) authorizes the court to issue an order "restraining the defendant from any contact with the victim."[4] We begin our analysis of the statute by determining the plain meaning of the word "contact." Dictionaries provide two applicable definitions of this word.[5] The first definition refers to physical touching between two things: "the state of physical touching" (Oxford Dictionaries Online <http://www.oxforddictionaries.com/definition/english/contact> [as of Dec. 3, 2013]); "union or junction of body surfaces[;] a touching or meeting" (Webster's 3d New Internat. Dict. (1993) p. 490.). The second definition refers to meeting or communicating: "the action of communicating or meeting" (Oxford Dictionaries Online <http://www.oxforddictionaries.com/definition/english/contact> [as of Dec. 3, 2013]); "a condition or an instance of meeting, connecting, or communicating" (Webster's 3d New Internat. Dict. (1993) p. 490.). Under this construction, the term "contact" requires physical touching, meeting, or some type of communication. Because the term is modified by "any" in the phrase "any contact," we construe the term broadly to include *all* forms of touching, meeting, or communication, whether direct or indirect.

1. *Harassing, Annoying, Stalking or Disturbing the Peace of the Victim*

The order enjoins defendant from harassing, annoying, stalking, or disturbing the peace of Elizabeth S. As a general matter, this conduct is likely to involve contact with the victim, either directly or indirectly. The more direct forms of this conduct—e.g., harassing phone calls, emails, or other missives—necessarily involve communication. But even indirectly harassing, annoying, stalking, or disturbing the peace of a person

_____

[4] Section 273.5, subdivision (i) contains identical language.

[5] Respondent objects to reliance on a dictionary definition as "narrow and literal." The objection is misplaced. "When attempting to ascertain the ordinary, usual meaning of a word, courts appropriately refer to the dictionary definition of that word" (*Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1121-1122.)

12

involves communication, if in the abstract. To a victim of domestic violence, these behaviors send a message of fear and intimidation. In other words, such conduct constitutes a *threat*—a form of communication. This point is illustrated by the legal definition of the offense of stalking as codified in section 646.9, requiring "a credible threat with the intent to place that person in reasonable fear for his or her safety. . . ." (*People v. Ewing* (1999) 76 Cal.App.4th 199, 210.)[6] Because harassing, annoying, stalking, or disturbing the peace of a victim involve communication, either directly or indirectly, we conclude that the trial court was authorized to so restrain defendant pursuant to subdivision (i) of section 136.2.

2. *Destroying the Property of the Victim*

The protective order enjoins defendant from damaging or destroying the property of Elizabeth S. As a general matter, damaging or destroying a person's property does not involve or require "any contact" with the person. Defendant could damage or destroy the property of the victim without touching her, meeting her, or communicating with her in any fashion, directly or indirectly. If defendant has access to or possession of the victim's property, he could even damage or destroy it without her awareness.

However, we recognize that it is also possible to "send a message" by damaging a person's property, e.g. to frighten or intimidate the victim. Like stalking, such conduct would therefore involve communication with the victim, constituting indirect contact. Accordingly, we will order the protective order modified to prohibit damaging or destroying the property of the victim with the intent to frighten, intimidate, harass, or annoy her.[7]

---

[6] We do not intend to incorporate this definition into section 136.2.

[7] Defendant should also note that maliciously damaging or destroying another person's property is already prohibited by section 594.

13

3.  *Coming Within 100 Yards of the Victim*

The protective order enjoins defendant from coming within 100 yards of Elizabeth S.  This condition prevents defendant from contacting her, since he cannot touch, meet, or communicate face-to-face with her while staying 100 yards away.  To the extent there is any ambiguity about whether mere proximity to the victim constitutes "any contact with the victim," we may look to the Legislature's intent in enacting the statute.  [W]hen the statute's language is ambiguous or susceptible of more than one reasonable interpretation, the court [may] turn to extrinsic aids to assist in interpretation." (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103; accord, *Olson v. Automobile Club of Southern California* (2008) 42 Cal.4th 1142, 1147.)

The Legislature's stated purpose, according to the language of the statute itself, is to provide for "the safety of the victim and his or her immediate family." (§ 136.2, subd. (i).)  A stay-away order is consistent with this intent.  By requiring the defendant to maintain a certain distance from the victim, the order prohibits direct, physical contact that could harm the victim, in addition to providing a cushion of safety whereby the victim may have extra time to contact law enforcement or escape from the defendant by herself.  We conclude that this provision is consistent with the authorization to enjoin "any contact with the victim."

4.  *Preventing or Dissuading the Victim or Witnesses*

The minute order prohibits defendant from "attempt[ing] to or actually prevent[ing] or dissuad[ing] any victim or witness from attending a hearing or testifying or making a report to any law enforcement agency or person."  Because the court did not impose this condition in its oral pronouncement of the protective order, we conclude that the condition could not be imposed by the minute order, as discussed below.[8]  We

_____

[8]  If defendant were to attempt to or actually prevent or dissuade Elizabeth S. from attending a hearing or making a report to law enforcement, he would be violating other

14

therefore need not decide whether this condition in itself is authorized by the statute. However, for the guidance of the trial court in other cases, we note that as it pertains to nonvictim witnesses, this condition would exceed the authority of the statute, which refers only to "contact with the *victim*," not witnesses.

E. *The Minute Order*

Defendant argues that the minute order improperly added conditions not imposed by the court's oral announcement of the protective order. Specifically, defendant complains that the minute order's requirements that he must not "annoy," "batter," "stalk," or "disturb the peace" of Elizabeth S., were not mentioned explicitly in the court's oral pronouncement. Second, the minute order required him to "surrender to local law enforcement or sell to a licensed gun dealer any firearm owned or subject to his or her immediate possession or control within 24 hours after issuance of this order," whereas the oral pronouncement required him "to surrender to local law enforcement any firearms that you do have." Third, the minute order stated that he "[m]ust have no contact with [Elizabeth S.] through a third party, except an attorney of record," whereas the oral pronouncement ordered him not to "have any third party contact her on your behalf." Finally, the minute order stated that he "[m]ust not attempt to or actually prevent or dissuade any victim or witness from attending a Hearing or testifying or making a report to any law enforcement agency or person." The court made no such order orally.

As to the minute order's conditions that defendant not "annoy," "stalk," or "disturb the peace" of Elizabeth S., we rule above that these terms fall within the definition of "contact." By the same logic, they fall within the court's oral

---

aspects of the protective order. Similarly, if he attempted to or actually prevented or dissuaded witnesses from attending hearings or making reports to law enforcement to harass, annoy, or disturb the peace of Elizabeth S., he could be violating other aspects of the protective order. Defendant should also note that the conduct described in this provision is already prohibited under section 136.1.

pronouncement that defendant "not have any contacts at all" with the victim. Therefore, the minute order did not improperly add these conditions; it merely listed specific examples of contact coming within the court's broad oral prohibition against "any contacts at all."

As to the minute order's condition concerning preventing or dissuading any victim or witnesses from testifying at a hearing or making a report to law enforcement, this condition was not authorized because it was not part of the court's oral pronouncement. "Rendition of judgment is an oral pronouncement." (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1183.) "The court's oral pronouncement controls over the abstract of judgment as the latter cannot add to or modify the judgment which it purports to summarize." (*Ibid.*) Accordingly, we will strike this condition from the protective order.

As to the minute order's condition that defendant must not "batter" Elizabeth S., we conclude that the act of battery falls within the court's oral pronouncement that defendant "not have any contacts at all" with Elizabeth S. since battery necessarily involves touching. (*People v. Marshall* (1997) 15 Cal.4th 1, 38.) The minute order did not thereby impermissibly add to the oral pronouncement with respect to this condition.

As to defendant's complaints concerning the firearm restrictions and third party contact, the court's oral pronouncement was substantially similar to the language set forth in the minute order. Any differences between them were de minimis.[9] (See *People v. Thrash* (1978) 80 Cal.App.3d 898, 901 [probation conditions need not be spelled out in great detail in court.]) We decline to strike these conditions from the protective order.

F. *Vagueness and Overbreadth*

Defendant raises numerous claims arguing the protective order is overbroad and vague. To the extent these claims allege violations of his rights to freedom of speech, association and travel, we find such claims waived for the reasons explained ante.

---

[9] The language of the minute order is actually somewhat *less* restrictive than the oral pronouncement in some respects.

16

Defendant also argues that the protective order is overbroad because it enjoins him from having any contact with Elizabeth S. regardless of who initiates the contact. For example, if Elizabeth S. sent him a letter while he was in prison, he could be found to be in communication with her, and therefore in "contact" with her. Respondent argues that the order implicitly includes the limitation that it can only be violated willfully and knowingly, but respondent does not object to our making it explicit. We agree. "[T]he law has no legitimate interest in punishing an innocent citizen . . ." (*People v. Freitas* (2009) 179 Cal.App.4th 747, 752 [modifying probation condition to prohibit knowing possession of a firearm].) Accordingly, we will modify the order to enjoin only willful, knowing contact with the victim. (See *People v. Petty* (2013) 213 Cal.App.4th 1410, 1424 [modifying probation condition to prohibit knowing violation of stay-away order].)

Defendant further contends the three-year duration of the order is unconstitutionally overbroad and arbitrary. But section 136.2, subdivision (i) grants the court discretion to impose a protective order "valid for up to 10 years." Defendant cites no authority supporting his claim that the court violated his constitutional rights by issuing an order valid for less than the ten-year maximum. While the statute provides guidance to the court on what factors to consider in determining the duration of the protective order, nothing in the statute requires the court to set forth its consideration of these factors on the record. In the absence of a showing to the contrary, we presume the lower court properly considered those factors. " 'A judgment or order of the lower court is presumed correct. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

Finally, defendant argues the protective order is overbroad because it does not contain a "safety valve" mechanism allowing him or Elizabeth S. to seek its modification in the future. Defendant cites no authority requiring this mechanism. Section 136.2 contains no mention of such a procedure, and we will not read one into it. "In the

17

construction of a statute or instrument, the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted. . . ." (Code Civ. Proc., § 1858.)

## III. DISPOSITION

The protective order is modified to enjoin only willful, knowing contact with the victim. The condition that defendant must not destroy or damage the property of the victim is further modified to prohibit destroying or damaging the property of the victim with the intent to frighten, intimidate, harass, or annoy her. The condition that defendant must not attempt to or actually prevent or dissuade any victim or witness from attending a hearing or testifying or making a report to any law enforcement agency or person is stricken. As modified, the protective order is affirmed.


_____
Márquez, J.


WE CONCUR:


_____
Elia, Acting P. J.


_____
Bamattre-Manoukian, J.


18